## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DR. JENNIFER SEED,**
     **439 East Luray Avenue**
     **Alexandria, VA 22301**

**Plaintiff,**

**vs.**

**Civil Action No:**


**JURY TRIAL DEMANDED**


**The UNITED STATES OF AMERICA**
     **THE HONORABLE LORETTA LYNCH**
     **ATTORNEY GENERAL OF THE UNITED STATES**
     **(on behalf of the United States of America)**
     **Department of Justice**
     **Room B-103**
     **950 Pennsylvania Avenue, N.W.**
     **Washington, D.C. 20530**

**The UNITED STATES ENVIRONMENTAL**
     **PROTECTION AGENCY**
     **The Honorable Regina McCarthy, Administrator**
     **1200 Pennsylvania Avenue, N.W.**
     **Washington, D.C. 20460**

     **Defendants.**

_____

## COMPLAINT

(Age and Related Discrimination and Retaliation in Federal Employment)

Plaintiff Dr. Jennifer Seed ("Plaintiff"), by undersigned counsel, herein states her

Complaint and Causes of Action against the United States of America ("United States"); the

United States Environmental Protection Agency ("EPA"); and Regina McCarthy, in her official

capacity as Administrator of the United States Environmental Protection Agency ("McCarthy").

## INTRODUCTION

1.      Plaintiff brings this action pursuant to the Age Discrimination in Employment Act, 29

U.S.C. §621 et seq. (in particular §633a), as amended, Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C.A. 2000e, et seq., (as to harassment), the Civil Service Reform Act

(simultaneous jurisdiction, 5 U.S.C. §7702(e)(1)(B)), in addition to 5 U.S.C. § § 7701-7703

(original actions generally brought in this Court under the aforementioned statutory subsection).

2.      Plaintiff, a truly extraordinary federal employee until subjected to age-based adverse

actions, was subjected to age discrimination, in violation of federal law, when during an illegal

"sweep" of older managers within her EPA division, she was initially constructively demoted

and then constructively removed after being subjected to months of intolerable working

conditions related directly to the disparate treatment and continuing hostile work environment

based upon myriad prohibited factors to which she was concurrently subjected.  Plaintiff

properly brings this discrimination action on certain discrete claims in federal district court after

exhausting her agency procedures and repeatedly being promised but not accorded an

Acknowledgment Order from the Equal Employment Opportunity Commission - or any

explanation regarding same - and waiting 120 days after raising mixed case claims before the

Merit Systems Protection Board.

2

## JURISDICTION AND VENUE

3.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1332,

29 U.S.C. §621 et seq.(§633a(c)), 5 U.S.C. §7702(e)(1)(B) (simultaneous jurisdiction provision).

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) as Defendants are located

in the District of Columbia, defendant McCarthy performs her official duties in the District of

Columbia, and a substantial number (if not all) of the actions and omissions giving rise to

Plaintiff's claims occurred in the District of Columbia.  In addition, Plaintiff was employed by

the United States Environmental Protection Agency in the District of Columbia at the time she

was constructively demoted and subjected to discrimination as a predicate to being

constructively removed from federal service and from the EPA; Plaintiff's employment records

are maintained by the EPA in this judicial district; and decisions adverse to Plaintiff's

employment that are the subject of this civil action were made in this judicial district.  Finally,

Department of Justice attorneys who serve as counsel for the United States, the EPA and for

defendant McCarthy in her official capacity all work and practice regularly in the federal District

of Columbia district court and perform their duties within the District of Columbia.

5.     The government's actions described herein were conducted intentionally, wrongfully, and

in bad faith, with the purpose of causing damage to Plaintiff in this judicial district.

6.     Following her timely request for hearing before the Equal Employment Opportunity

Commission ("EEOC"), and beginning in August of 2014, Plaintiff placed no fewer than twelve

telephone calls to EEOC Washington Field Office "Federal Hearings Clerk" Johnny Milligan

("Milligan")(at phone number (202) 419-0718).  On each of these occasions, Plaintiff's counsel

was assured by Milligan that Plaintiff would receive an "[EEOC] Acknowledgment Order within

30-60 days."  The telephone contact number provided by Milligan no longer accepts calls, and as

3

noted below the EEOC has not been responsive to subsequent complaints in reaction to EEOC non-action and unexplained, inordinate delay.

7.      As of the date of filing this Complaint, Plaintiff also objected to the EEOC Washington Field Office through exchange of electronic mail on three separate occasions - following the refusal of Milligan's office to accept calls - on January 8, 2016; February 9, 2016; and March 9, 2016.   Importantly, the Acknowledgment Order promised so emphatically by Milligan has simply not materialized, despite the vehement complaints of the Plaintiff.

8.      Subsequently, and based upon newly-discovered evidence emanating from the sworn testimony of the "Responsible Management Official" in the underlying EEOC matter (Dr. Tala Henry), Plaintiff filed a separate "mixed case appeal" to the Merit Systems Protection Board ("MSPB").  In her MSPB Appeal of October 12, 2015 ("Appeal"), Plaintiff set forth the partial foundation of the underlying mixed case, including intolerable working conditions (involving constructive demotion and continuing hostile work environment and disparate treatment) as the causative factor(s) precipitating her constructive discharge - thereby serving to administratively exhaust remedies where necessary and, as appropriate here, advance related mixed case claims that have been "temporally exhausted" through a exclusive direct congressional grant of jurisdiction.

9.      As such, and as more than 120 days have passed since the filing of her Appeal with no final MSPB action, Plaintiff has the option of proceeding with her mixed case in federal district court under the simultaneous jurisdiction provisions of 5 U.S.C. §7702(e)(1)(B) and/or the jurisdiction afforded by 29 U.S.C.A.  § 633a(c).  Without waiving any rights to proceed in any other *fora*, Plaintiff sets forth her Complaint as Congress intends and pursuant to explicit, unequivocal congressional jurisdictional grant(s).

## PARTIES

### THE PLAINTIFF

10.     Plaintiff Dr. Jennifer Seed is a former career management official at the Environmental

Protection Agency, with a (previous) grade - at the time of her forced retirement - on the General

Schedule of GS-15.  Dr. Seed was constructively demoted by the EPA (to a position where she

was constantly and intentionally humiliated, and her extraordinary skills both denigrated and

(illegally) certified as at grade level, and, similarly, constructively discharged after being

subjected to such intolerable working conditions as part of a continuing hostile work

environment and disparate treatment based upon her age, and in reprisal for engaging in

protected activity under federal law.

### THE DEFENDANTS

11.     Defendant Environmental Protection Agency is an agency of the United States which,

upon information and belief, was created for the purpose of protecting human health and the

environment by writing and enforcing regulations based on laws passed by the Congress.  The

EPA is managed by a presidentially-appointed and United States Senate-confirmed ("PAS")

official known as the Administrator.

12.     Defendant Regina McCarthy is the current Administrator of the EPA.

13.     The United States of America (as well as EPA and McCarthy) are proper defendants

pursuant to 28 U.S.C §§1331, 1332, 5 U.S.C.A.  § 7702(e)(1)(B), 29 U.S.C.A.  § 633a(c).

14.     As is clearly the case regarding EPA and McCarthy here, the United States Court of

Appeals for the District of Columbia Circuit has found that the language of 29 U.S.C.A.  § 633a

allows a federal employee to prevail by proving that age "was a factor" in the employment

decision. *Ford v. Dept. of the Navy*, 629 F.3d 198 (D.C. Cir. 2010).

## FACTUAL ALLEGATIONS

15.     Plaintiff was, at the time of the age-based discrimination underlying this complaint, over 40 years of age (at all relevant times, Plaintiff was between the ages of 59 and 60 years of age). Prior to being subjected to intolerable, discriminatory working conditions *based upon her age* which rendered involuntary her "retirement", Dr. Seed had been a management-level official at the EPA in the Office of Pollution Prevention and Toxics ("OPPT"), Risk Assessment Division ("RAD") since 1998.  Prior to her constructive discharge (and age-based constructive demotion), Dr. Seed had been employed by the federal government for 23 years.

16.     Defendant EPA acted unlawfully when they constructively demoted Plaintiff, refused to consider her for a clearly-delineated branch chief position for which she was the most qualified, and discharged Plaintiff - all unlawful "employer practices" with respect to terms, conditions and/or privileges of employment - because of Plaintiff's age.

17.     Further, EPA acted unlawfully when they deprived Plaintiff of employment opportunities, *e.g.*, aforementioned refusal to consider Plaintiff, who was (far and away) best qualified for a branch chief position, and/or otherwise adversely affected her status as an employee (constructive demotion and ultimate constructive discharge, among others) - because of Plaintiff's age.  EPA's conduct, by any standard, was both pervasive and severe, and therefore subjects the EPA to vicarious and strict liability under the *de jure* discrimination and intolerable working conditions described herein to the extent that this discrimination, at it must, constitutes harassment based upon age.

18.     EPA acted unlawfully when they "otherwise discriminated against" Plaintiff on the basis of her age - *inter alia*, the replacement of Plaintiff by much younger employees (ten and twenty years, respectively) with respect to the two positions from which Plaintiff was (1) constructively

6

demoted (and replaced in her previous Deputy Division Director position by Stanley Barone [age 53]) and (2) constructively discharged (and replaced in her previous Senior Science Advisor position, by Todd Stedeford [age 42]) - because of Plaintiff's age.

19.     From 1998-2013, Plaintiff served as a Branch Chief and then as Deputy Division Director for the Risk Assessment Division ("RAD").  In both positions, Plaintiff served dual roles - as a manager and as a senior scientist.  RAD is the division from which Plaintiff was ultimately constructively discharged, and within which Plaintiff was constructively demoted, based upon prohibited factors and primarily upon the recommendation of Dr. Tala Henry ("Henry"), the incoming RAD Division Director empowered by her direct supervisor Wendy Cleland-Hamnett ("Cleland-Hamnett") to constructively demote older RAD managers.

20.     EPA acted unlawfully when they discriminated against Plaintiff for alleging illegal discrimination in a filing - *i.e.*, for "opposing any [unlawful] practice" or for "mak[ing] a charge... or participating in any manner in an investigation, proceeding or litigation" - through formal channels with both the EPA Office of Civil Rights ("OCR") and, after exhaustion of OCR review, with the United States Equal Employment Opportunity Commission ("EEOC").  Such EPA reprisal/retaliation took the form of subjecting Plaintiff to intentional, intolerable working conditions and related harassment underlying her constructive removal from the EPA.

21.     Further, Defendant EPA specifically reserved for younger personnel certain branch chief positions within the RAD, Office of Pollution Prevention and Toxics ("OPPT"), *based only upon the status of being younger* and having attended a certain course of training sponsored by Defendant EPA.  Such policy had a *100% i.e., absolute, unlawful disparate impact* upon Plaintiff and similarly-situated older RAD employees- and is per se illegal.

22.     Pervasive and severe conduct, including harassment, by Henry and Cleland-Hamnett towards multiple older RAD employees created a continuing hostile work environment and concomitant intolerable working conditions toward these older managers based upon their age. This was especially apparent concerning Plaintiff, the highest ranking of these older RAD managers, who had previously been selected instead of Henry (thus providing an[other] inference of motive) for the position from which she was illegally removed by Henry and Cleland-Hamnett.  As the Court and Defendants know, "pervasive" conduct does not necessarily have to be focused on the same older employee, and is established, *inter alia,* by treatment involving multiple victims (as happened here).  Conduct does *not* have to be both pervasive and severe, although the Henry additional harassing conduct would meet any "sliding scale" test, *e.g.*, more pervasive conduct need not be as severe - as both were present as related to older managers and, in particular, Plaintiff.

23.     Not only was the policy of Henry and Cleland-Hamnett (and Jones) in itself *de jure* age-based discrimination, it was yet another in a long and continuing list of unlawful hostile work environment and harassment based upon age and reprisal carried out by these wrongdoers with the approval and encouragement of McCarthy.

24.     An integral piece of Defendant EPA's age-based discrimination was undue pressure by her immediate supervisors including unlawful support up to and including EPA Administrator McCarthy - in the form of intolerable working conditions underscored by severe and pervasive harassment - to separate from government employment through an "early separation" program.

25.     Plaintiff, based upon the above paragraphs, was clearly not "made free from any discrimination based upon age" with respect to "[a]ll personnel actions affecting employees ... who are at least 40 years of age...", as set forth in 29 U.S.C.A.  § 633a(a).  To the contrary, the

direct discrimination to which she was subjected - and to which Dr. Tala Henry has subsequently admitted under oath with respect to the branch chief selection discrimination - is *enough for the jury to find in her favor* on all Counts set forth herein.

26.     By congressional design, under 29 U.S.C.A . § 633a(a) and as a federal employee, Plaintiff need only show that she was "not made free from discrimination" based upon age.  The past conduct and sworn statements of Plaintiff's supervisors are proof positive that she was not made free from discrimination - and was in fact subjected to easily cognizable, *de jure* discriminatory and unlawful conduct.  Presumably, *no case could be more clear* concerning unlawful discriminatory conduct by the EPA.

27.     It is abundantly apparent, from the face of the relevant statute(s), not only that EPA cannot be relieved of its "responsibility to assure nondiscrimination on account of age in employment as required under any provision of Federal law", *see* 29 U.S.C.A. § 633a(e), but also that "any person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal and equitable relief as will effectuate the purposes of  this Chapter [including but not limited to Sec. 633a].  *See* 29 U.S.C.A. § 633a(c).

**I.      Foundations of Plaintiff's Employment and Subsequent Agency Unlawful Behavior**

28.     Plaintiff received outstanding ratings on her Performance Appraisals during her entire tenure at EPA, and was the recipient of many Agency awards including several prestigious "gold medals".  Plaintiff was also involved in several international projects with the World Health Organization and the Organization of Economic and Cooperative Development.  During this time, Plaintiff attended most decision meetings and briefings with senior EPA management - including the PAS Assistant Administrator of the Office of Chemical Safety and Pollution

Prevention ("OCSPP") led by a key vicarious malefactor, Assistant Administrator James "Jim" Jones ("Jones").

29.     Plaintiff had previously been selected based upon merit as the RAD Deputy Division Director instead of Henry.  Further, Plaintiff had previously supervised the younger male who replaced her, Barone.  There could therefore be no legitimate reason (business or otherwise) to constructively demote Plaintiff and insert the far-less competent and/or accomplished Barone.

30.     Plaintiff had served as Branch Chief for the Existing Chemical Assessment Branch in RAD from 1998-2009, and served as the RAD Deputy Division Director from 2009 until the date of her constructive demotion  (which was noticed to Plaintiff by Henry on September 9, 2013, and effective November 2013).  The constructive demotion made even more unbearable the continuing hostile work environment and harassment, accompanied by illegal disparate treatment - until the aforementioned intolerable working conditions resulted in Plaintiff's forced retirement. *See McClelland v. Andrus*, 606 F.2d at 1291 (D.C. Cir. 1979)(Agency may not use reassignment as a veil to improperly pressure an employee to retire, as reassignments can be used as "a sham way of achieving a predetermined result").

31.     The pretext under which Plaintiff was constructively demoted was that of a RAD "reorganization" - which in reality served no purpose other than to remove four older managers from the division and insert several younger, less-qualified employees.  Cleland-Hamnett and Jones specifically delegated authority to Henry - even prior to her actual starting date as RAD Director - to make personnel determinations [such as the constructive demotion regarding Plaintiff] and communicate those discriminatory determinations directly to Plaintiff and other victims of the scheme.

32.     On September 9, 2013, Plaintiff met with Henry in Henry's office from 8:30 a.m. until 8:45 a.m. ("September 9th Meeting").   At approximately 8:34 a.m., Henry informed Plaintiff of the proposed RAD "reorganization", and that Plaintiff would be "reassigned" [constructively demoted] to the position of "senior science advisor."

33.     During the September 9th Meeting, Henry also informed Plaintiff that she [Plaintiff] would be displaced as RAD Deputy Division Director in favor of Barone [then a branch chief]. At all times relevant to this complaint, Plaintiff was far superior to the younger Barone in terms of qualifications, temperament, and, quite frankly, every aspect of relevant EPA work.

34.     During the September 9th Meeting, Plaintiff expressed her objection and dismay with her unwanted displacement - referring to it (at approximately 8:39 a.m.) as "uncalled for" and "the end of any future for me at EPA."

35.     During the September 9th Meeting, at approximately 8:41 a.m., Plaintiff *inquired about the vacant Branch Chief position advertised internally (via e-mail) by Henry*, and was informed, in no uncertain terms, that "they [Henry, Cleland-Hamnett and Jones] were ***looking to give the newer, younger individuals an opportunity to advance through management promotions, particularly those that were in [EPA] leadership programs.'"***   At all times relevant to this complaint, Plaintiff was far superior to the inexperienced, unskilled, and untested "newer, younger individuals" whose *only* "accomplishments" appear to be placement in a "EPA leadership program."

36.     The EPA policy (of advancing newer, younger persons *based only upon their participation in a "leadership program"*) is *per se* discrimination, <u>*as a matter of law*</u>, and has no place in this (or any other) workforce.  The policy, not surprisingly, had a 100% disparate impact upon those highly skilled, experienced, and older RAD managers - whose only comparative,

quantitative (or qualitative) disadvantage is that they are not "newer and younger".  Further, since older managers do not appear eligible to participate in the "leadership programs", EPA and OPPT (Cleland-Hamnett, Jones) have created the equivalent of a "discrimination testbed" - intended for no other purpose than the sweeping of older, more experienced and sophisticated managers from the ranks of RAD.

37.     RAD explanations for a "reorganization business case" are simply not credible, in light of the admitted *de jure* age-based discrimination by Henry and Cleland-Hamnett.

38.     Plaintiff was constructively demoted to the position of "senior science advisor" effective November, 2013.  Recently-discovered evidence reflects that the constructive demotion was inextricably intertwined with a veil of age discrimination directed at Plaintiff and part of a "sham" reorganization meant to remove older managers from RAD and insert younger, newer ones.  This sham also has criminal implications, as among the pretexts presented involved Henry and Cleland-Hamnett (through her direct assistant, Barbara Cunningham), approving and certifying time and attendance at the GS-15 level (in order to corruptly evade the jurisdiction of administrative courts) while *assigning little to no grade-level work.*

39.     In the sham RAD "reorganization", all of the older managers were removed [constructively demoted] from management positions - against their will - and all but one constructively removed from EPA and federal government service.  The one remaining "older" manager constructively demoted has (1) been subjected to a continuing hostile work environment involving constant harassment; (2) filed several appeals, complaints and disclosures of EPA wrongdoing; and (3) will upon exhaustion likely file a complaint in this Court seeking relief for, *inter alia*, age, disability, and myriad other discrimination carried out by the same line managers (Henry, Cleland-Hamnett, Jones and McCarthy).

40.     The initial illegal constructive actions to which Plaintiff was subjected - the first characterized as a "directed reassignment" - was/were entirely involuntary, coerced and the unlawful product of ongoing deception by the Agency to provide pretext for their age discrimination policies and illicit objectives - some criminal in nature - as set forth herein.

## II.      Prior Protected Activity and Temporally-Related Intolerable Working Conditions

41.     Plaintiff, through appropriate channels, reported her supervisor's unlawful behavior to the EPA Office of Civil Rights ("EPA/OCR"), and initiated an internal complaint through an "Initial Contact" on September 27, 2013.  The "Initial Interview" of Plaintiff took place on October 24, 2013.  Alternative Dispute Resolution was offered and rejected by Plaintiff on October 24, 2013.  A "Notice of Right to File" was thereafter issued to Plaintiff and she filed a "formal stage" discrimination complaint on January 21, 2014.  Plaintiff's EEO claim was accepted by the EPA/OCR via letter of February 27, 2014.

42.     On Thursday, October 31, 2013, Henry was made aware by EPA/OCR that Plaintiff had filed a claim naming Henry as the Responsible Management Official on the basis of age discrimination.  While Plaintiff's claims here are obviously broader than those of which Henry was placed on notice, the notice to Henry was (and is) sufficient for purposes of the court's reprisal analysis.

43.     Plaintiff's OCR "EEO Investigation Report" was completed on June 5, 2014, and Plaintiff was informed of her continuing rights in a letter from EPA OCR on June 17, 2014.  *See* 2013-0110-HQ.  Plaintiff timely filed her EEO Complaint with the EEOC Washington Field Office thereafter.

44.     In the affidavits which accompany the "EEO Investigation Report," Cleland-Hamnett appears to distance herself from the decisions and actions of Henry.  Meanwhile, Henry in her

13

affidavit suggests a much more "hands on" role for Cleland-Hamnett in the alleged age-based constructive demotion and an "unknown" role for Jim Jones - who ultimately approved this (and every other) constructive demotion as well as the *de jure* policy in RAD.  Both Henry and Cleland-Hamnett signed each page of their Affidavit "Under Penalty of Perjury," and in addition swore to the entirety of their Affidavits under additional penalties involving felony false statements under 18 U.S.C.A.  § 1001.  *See* 2013-0110-HQ,  EEO Investigation Report, at Tabs B and C.

45.     Plaintiff was thereafter subjected to a deliberate and sadistic continuing hostile work environment, harassment and disparate treatment in an attempt to compel her to resign or retire (or worse).  So while other "science advisors" at EPA have duties that involve, *inter alia*, providing scientific leadership within the Agency, developing national and international environmental science policy, reviewing high-level scientific documents prior to their dissemination, and providing expert guidance and advice to senior management, Plaintiff was ordered to do primarily non-grade-appropriate work.  Such comparators, as would be expected considering their level of judgment and expertise, are, *inter alia*, invited to most principal-level briefings and concomitant decision meetings.  Plaintiff, once constructively demoted, was deliberately excluded from any such involvement, and was ignored while her direct supervisors (Henry and Cleland-Hamnett, Henry's direct line supervisor) continued to certify on official time and attendance records that Plaintiff was doing the advanced work of a GS-15 senior science advisor - an unambiguous attempt to circumvent the EEOC laws and presumably a series of violations of Title 18.

46.     In a calculated attempt to deeply humiliate Plaintiff - the former second-ranking official in the RAD - Henry removed her from an office and placed her in an open cubicle along a

common route in the office.  Significantly, and as noted, Plaintiff was inappropriately removed

by Henry from any significant or grade-appropriate assignments, was never invited to meetings

with senior management, was not asked to review *any* existing chemical risk assessment

documents being developed by RAD, and any lead role Plaintiff had previously played in key

projects was/were abolished.  Furthermore, senior managers such as Cleland-Hamnett (and at her

instruction) walking past Plaintiff's cubicle refused to even acknowledge her - a direct attempt to

by such harassment to foment a hostile work environment.

47.     As alluded to, assignments given to Plaintiff by Henry were *intentionally below grade-*

*level*.  Much of this assigned work was at the GS-10 or GS-11 level, *judging from grade level of*

*the individuals who had previously done the work*.  Other work assigned was essentially entry

level "busy work" - for which no feedback was ever provided - and seemingly intentionally

excluded from any critical element (or otherwise) under performance appraisal principles.

48.     Following the intentionally humiliating placement of Plaintiff in the open cubicle, and the

ensuing harassment, Henrys' only interaction with Plaintiff was in the form of unremitting

scornful and deeply-condescending remarks and threats.  For examples of pervasive and severe

misconduct, when Plaintiff would *inquire* about any particular assignment, Henry would reply in

a menacing and visibly threatening tone: "Are you refusing to do as I told you?" - clearly

intimating that further such query would be considered grounds for insubordination and

dismissal.

49.     The continuing hostile work environment, harassment and disparate treatment following

the illegal constructive demotion of Plaintiff was so intolerable - as intended by Henry and

Cleland-Hamnett - that Plaintiff became deeply and markedly depressed.  The discriminatory

treatment by Henry and Cleland-Hamnett became so unbearable that Plaintiff contemplated simply resigning with no job prospects despite her world-renowned reputation.

50.     In order to maintain her emotional well-being, and concurrently concerned that Henry and Cleland-Hamnett were violating the time and attendance (criminal) provisions of Title 18, United States Code, Plaintiff sought ways to mitigate Agency damages and avoid contact with the wrongdoers mentioned above.

51.     Plaintiff was caused to be (by defendant's illegal actions) "at the verge of collapse" due to Henry's discriminatory and harassing treatment and the policy of Cleland-Hamnett and her immediate superior, Assistant Administrator Jones, to sweep older managers from the Agency under the veiled pretext of "reorganization".  Left with no option to escape this cruel discrimination, Plaintiff forfeited approximately seven weeks of annual leave (a lump sum payment she simply gave up) in order to avoid, at any cost, the tormenting treatment by Henry and Cleland-Hamnett - meant to destroy Plaintiff financially and force her to leave the Agency.

52.     Henry and Cleland-Hamnett, as part of their pretextual sham to sweep older managers, and to cover up their illegal discrimination, coerced some older managers to apply for a Voluntary Separation Incentive Payment ("VSIP").  This action by Henry and Cleland-Hamnett, in itself, was blatantly illegal in undermining the (VSIP) intent of Congress in violation of federal appropriations law - as the VSIP is only to be offered (according to the Office of Personnel Management) to employees "*who are in surplus positions or have skills that are no longer needed in the workforce.*"  The coercion was thus compounded with behavior in (further) contravention of federal law.

53.     Threatened further with loss of benefits if Plaintiff was noticed for removal from federal service (a threat that is also illegal, especially when considered alongside the fact that no reason

16

whatsoever existed for removing Plaintiff), Plaintiff was faced with no reasonable alternative (as a result of the Henry and Cleland-Hamnett illusory tactics and harassment, and resulting intolerable work environment) other than to take an early separation from federal employment.

54.     Upon information and belief, Henry and Cleland-Hamnett coordinated their illicit proposal with Jones and Administrator McCarthy - in order to provide headroom for younger employees as part of the age discrimination strategy and pretext they had planned for "newer and younger" employees on which the EPA had invested resources (notwithstanding these employees' relative talent), and which Henry and Cleland-Hamnett were now executing.

55.     Plaintiff was involuntarily forced from federal service, with the full support and encouragement from the highest levels of the Agency - including but not limited to Henry, Cleland-Hamnett, Assistant Administrator Jones and Administrator McCarthy.

56.     Plaintiff was 60 years old at the time of her involuntary, forced retirement - carried out in accordance with the pretense imposed upon older Agency employees by Henry, Cleland-Hamnett and Jones by using the veil of pretext (and utilizing the VSIP ruse as a threat to Plaintiff and other witnesses) to cover up their discrimination based upon age.

57.     Plaintiff is bringing age discrimination claims, as well as reprisal and hybrid Title VII harassment claims involving the underlying continuing hostile work environment and disparate treatment (both before and after her constructive demotion) for which Henry, Cleland-Hamnett, and Jones were directly responsible - both by commission and omission.  *See Motto v. United States*, 502 F.2d 1165 (5th Cir. 1974), *cert. denied*, 420 U.S. 927 (1975)(Agency may not use a reassignment in order to obtain a retirement and thus deprive the employee of appeal rights).

58.     Although Plaintiff was able to receive a VSIP, the conditions of her employment were made so intolerable by Henry and Barone (the incompetent younger male who replaced Plaintiff

17

as RAD Deputy Division Director), and were knowingly and intentionally approved and

encouraged by Cleland-Hamnett and Jones, that nothing about the forced retirement can be

considered "voluntary".  Rather, Plaintiff was subjected to constant Agency discrimination, bad

faith, and violation of myriad other laws as part of their pretextual misconduct - and the VSIP

authority was illicitly utilized by these Agency wrongdoers in furtherance of their scheme.

59.     Further, as additional proof of Agency bad faith, the "voluntary" retirement incentive

authority was constantly expressed as a reminder that Plaintiff was eligible to retire (in itself an

unlawful age-based element of "intolerable working conditions"), *see Patrick v. Dept. of

Agriculture*, 173 F.3d 434 (Fed. Cir. 1998)(Table)(VSIP can in itself create requisite time

pressure underlying finding of involuntariness), such that under no circumstances can Plaintiff's

forced retirement be considered anything but involuntary under the civil rights laws and merit

systems principles.

60.     As noted, upon information and belief, Cleland-Hamnett and Jones - with the

administrative enforcement of Henry and the eager assistance of Cleland-Hamnett subordinate

Jeffrey Morris - undertook a "sweep" (removal from position) of older managers within RAD.

For example, Dr. Phillip Sayre (formerly Associate Director of RAD), was inexplicably (and he

claims, illegally) constructively demoted and removed on age-based grounds by Morris and

Cleland-Hamnett.  Dr. Sayre (like Plaintiff) was constructively demoted, subjected to intolerable

working conditions and involuntarily discharge.  Plaintiff and Sayre appear similarly-situated for

ADEA purposes with other RAD employees during the same time frame who were subjected to

age discrimination and related harassment under Title VII.  *See generally Tadlock v. Powell*, 291

F.3d 541, 547 (8th Cir. 2002)(affirming a finding of age discrimination resulting from a

constructive discharge through the forced retirement of an FDIC manager who was reassigned and reduced in status without sufficient cause).

61.     By and through the coercion of Henry, Morris and Cleland-Hamnett, Plaintiff and those similarly situated were essentially provided by the Agency the very terms of their coerced departures without providing any realistic alternative but to resign or retire - due to the improper acts of the Agency.  *See Schultz v. United States Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987). Henry and other supervisory personnel made Plaintiff's situation so intolerable, and her working environment so hostile, that Plaintiff had no realistic alternative but to resign or retire.  *Shoaf v. Dept. of Agriculture*, 260 F.3d 1336, 1341 (Fed. Cir. 2001).

## III.     Disparate Impact

62.     Upon information and belief, the rationale for the RAD "reorganization" - which provides illegal pretext for the significant and widespread violation of the civil rights of several highly-qualified, older managers - was entirely contrived.  Rather, this policy had a disparate impact upon older, more experienced managers who were forced out in favor of installing younger, less-experienced (but more submissive) employees.

63.     Further, Plaintiff's employer (EPA), by and through Henry, Cleland-Hamnett and Jones, deliberately made Plaintiff's working conditions intolerable as part of a continuing hostile work environment and thereby constructively forced her removal from the agency.  These are the same illicit tactics that the wrongdoers used in "sweeping" other older managers from RAD.  Their actions, as set forth herein, brought about the only natural consequence of their inherently intolerable misconduct.  Plaintiff's departure was a reasonably foreseeable consequence in light of these wrongdoing individuals' direct, open, notorious and intentional degradation of and threats against Plaintiff described herein, and their failure to take remedial measures.

19

64.     One need only consider the extent to which EPA would go to humiliate Plaintiff (and others impacted by the admitted policy of Henry and others to promote younger employees in place of older ones) in order to draw the inference that Henry, Cleland-Hamnett and Jones acted with the intent to force Plaintiff to leave the Agency.

65.     Relevant to the continuing hostile work environment and disparate treatment to which Plaintiff and others were subjected was (and is) the close relationship between Morris, and the younger male who replaced Plaintiff following her constructive demotion (Barone).  Dr. Morris (who was temporarily seconded by Cleland-Hamnett to manage, along with Henry, the RAD "reorganization"), upon information and belief, suggested the noncompetitive promotion of Dr. Barone rather than leave Plaintiff (who was and is far superior in qualifications to Barone) in place as Deputy Division Director.

66.     Henry was also instructed by Cleland-Hamnett to undertake "difficult discussions" with those who would be removed from their RAD managerial positions, and to inform those impacted by these adverse actions that Cleland-Hamnett had selected Henry to become the permanent RAD Director.  As conceded by Cleland-Hamnett, and described herein, these "discussions" were undertaken upon instructions/permission from Cleland-Hamnett and well in advance of Henry assuming the RAD Director position for which she had been selected by Cleland-Hamnett and Jones.

67.     Upon information and belief, Cleland-Hamnett and Jones, consistent with the recommendation of Henry, decided to replace Plaintiff with a younger male (Barone) - despite Barone's inadequate experience, judgment, intellect and temperament, *i.e.*, qualifications.

68.     Plaintiff's displacement despite superior qualifications was part of the practice initiated by Jones and Cleland-Hamnett - and condoned by McCarthy - of "sweeping" older managers

(thus far, at least four under the direction of Jones and Cleland-Hamnett) from their supervisory positions and replacing them with younger, less-qualified employees.

69.     Henry became RAD Director effective October 1, 2013.  Upon the instruction of and with the full authority of Cleland-Hamnett, and as noted above, Henry met *prior to* the effective date of assuming the RAD Director position with each of the individuals who would be adversely affected by the "reorganization" of RAD and instructed them of their constructive demotion(s)/"reassignments".

70.     Henry informed Plaintiff, during a face-to-face meeting on or around September 9, 2013, that she (Henry) was reassigning Plaintiff and replacing her with Barone.  During the course of this meeting, when Plaintiff inquired about a RAD branch chief position, Henry informed Plaintiff in no uncertain terms that she (Henry) was **"seeking to give the newer, younger employees in the Division an opportunity to assume management positions - particularly those that were in the EPA-sponsored leadership programs."**  Plaintiff was 58 years, 11 months and 21 days of age at the time this meeting and conversation occurred.

71.     Upon information and belief, and corresponding with the policy that had been adopted by Jones, Cleland-Hamnett and Henry, and approved by McCarthy, Plaintiff was replaced in the position she encumbered prior to her constructive demotion by a younger male who is inexperienced, intemperate and a poor manager.

72.     Plaintiff, having refused to step aside despite the threats and pressure to do so, was constructively demoted based upon age, and disgorged of all management responsibility. Plaintiff was then subjected to intentional and malicious treatment, making her working conditions intolerable.  After months of degradation, humiliation and other aspects of an intolerable working environment ordered by Henry and condoned by Cleland-Hamnett, Plaintiff

21

was ultimately subjected to constructive removal.  In the interim, Plaintiff reported the conduct

of Jones, Cleland-Hamnett and Henry (as she believed herself compelled to do, as they had

engaged in multiple prohibited personnel practices) to the United States Office of Special

Counsel.

73.     Although consideration of the recency of the EPA-sponsored leadership programs does

not *automatically* violate the ADEA, *Taylor v. USPS*, EEOC No. 01871359 (EEOC 1998), it will

be deemed violative if the agency cannot establish an true and actual reason for requiring more

recent experience or education.  *Eldredge v. DLA*, EEOC No. 01883635 (EEOC OFO 1989).

74.     Similarly, Henry's comments evidencing a discriminatory bias, *e.g.*, "giving newer,

younger employees an opportunity to assume management positions," can constitute age

discrimination.

75.     Recently-discovered evidence (previously withheld by the Agency and recently conceded

by Henry) also necessitated the filing by Plaintiff of a mixed case appeal to the Merit Systems

Protection Board, from which this action is taken *de novo*.

76.     The newly-discovered evidence, upon information and belief, tends to underlie the

inference that Henry created a (not so elaborate) pretext of suggesting - in order to buttress the

fraudulent and pretextual "business purpose" of the discriminatory reorganization - that Plaintiff

(as well as others constructively demoted under similar circumstances) would conduct duties

appropriate to a senior GS-15 when in fact Henry falsely approved and certified (along with

Cleland-Hamnett) the time and attendance of those constructively demoted.  The false time and

attendance signings provide further underlying proof of the humiliating, hostile work

environment to which Plaintiff (and others) were subjected as a result of this disparate treatment

(and sham policies having a disparate impact upon older workers) - the false time and attendance

22

signings also provide further evidence of pretext underlying the alleged efficiencies of the pretextual reorganization.

77.     Any reasonable person(s) would have felt compelled to resign when subjected to the adverse work conditions and policies imposed by Henry, Cleland-Hamnett and Jones.

## IV.   Conclusions

78.     In federal sector cases, as here, the District Court may accord certain recognitional deference to findings of the Equal Employment Opportunity Commission.  As such, Plaintiff need, for example, not prove that age was the "but for" cause of the discriminatory employment actions - even where they may be mixed motives by Henry, Cleland-Hamnett, and Jones.  *See generally Goblirisch v. Postmaster General*, EEOC No. 0120110390 (EEOC OFO 2011).  The federal sector age discrimination sub-section does not employ the 'because of' language upon which the Supreme Court based its private sector holdings in *University of Texas v. Nassar*, 570 U.S. ____, (2013).

79.      Rather, *and seemingly dispositive here*, the United States Court of Appeals for the District of Columbia Circuit found that the language of 29 U.S.C.A.  § 633a allows a federal employee such as Plaintiff to prevail on the merits by proving nothing more than age "was a factor" in the employment decision. *Ford v. Dept. of the Navy*, 629 F.3d 198 (D.C. Cir. 2010).

80.     The totality of the circumstances set forth herein, must plainly lead to a determination that older, more experienced personnel were subjected to constructive adverse action(s).

81.     The age discrimination laws clearly foresee and remedy discrimination on the basis of age (59-60) when the EPA removes supervisory duties and makes concedes (with de jure age-based comments) - including that "younger, newer people" require headroom, notwithstanding

their qualifications.  *See e.g., Cook v. Dept. of Labor*, EEOC No. 0720080045 (EEOC OFO 2010).

82.     As relevant to the conduct of Henry, Cleland-Hamnett and Jones, EPA is subject to vicarious liability for unlawful continuing harassment based upon age and reprisal perpetrated by supervisors with immediate and successively higher authority over Plaintiff, *Burlington Industries v. Ellerth* 118 S.Ct. 2257 (1998); *Farragher v. City of Boca Raton*, 118 S.Ct. 2275 (1998).  EPA is similarly liable, therefore, for age-based and retaliatory vicarious liability for supervisory harassment.

## CAUSES OF ACTION

### COUNT I
### (Violations of 29 U.S.C. §621 et seq. - Age Discrimination in Employment)

### Against Defendant Environmental Protection Agency

83.     The foregoing paragraphs 1-82 are realleged and incorporated by reference herein.

84.     The EPA constructively demoted Plaintiff, and subjected her to disparate treatment and a continuing hostile work environment in order to make Plaintiff's working conditions intolerable, in an attempt to force her to resign or retire.  Plaintiff was subjected to such willful discrimination because of her age.  *See O'Connor v. Consolidated Coin Caterers*, 517 U.S. 308 (1996); *see also Spaeth v. Georgetown Univ.*, 839 F. Supp. 2d 57, 62 (D.D.C. 2012)(age discrimination claims should be construed liberally at the motion to dismiss stage).

85.     Henry, plaintiff's putative supervisor (pursuant to decisions at that time already made by second-line supervisor Cleland-Hamnett and Cleland-Hamnett's supervisor, Jones), during an office reorganization begun in 2013 with the support and knowledge of Cleland-Hamnett and

24

Jones, illegally pressured Plaintiff to step aside as Deputy Division Director in favor of younger, far less-qualified EPA personnel.

86.    Specifically, on September 9, 2013, defendant Henry informed Plaintiff that she would be involuntarily reassigned, a form of constructive demotion, from RAD Deputy Division Director to a Senior Advisor position in order to "provide opportunities" (for promotion) to management positions for younger staff.

87.    Henry forced Plaintiff to accept the constructive demotion (or risk insubordination and removal "for cause" with accompanying loss of immediate health and other benefits) as part of a staffing plan that defendants Cleland-Hamnett and Henry (with the approval of Jones) had illegally devised for the Risk Assessment Division as a pretextual veil for age and related discrimination.

88.    Cleland-Hamnett and Jones, having approved of Henry meeting with staff in the manner described in the preceding paragraph, have never acted to mitigate this *prima facie* direct discrimination - which would support an inference of their discriminatory intent.

89.    Plaintiff was replaced (in the position she encumbered when constructively demoted/removed) by a younger, less competent male named Stanley Barone.  The personnel action was ordered by Henry and approved by Cleland-Hamnett.

90.    The credentials of Stanley Barone are far inferior to those of Plaintiff, and Barone is younger than Plaintiff, and the action(s) were taken because of Plaintiff's age and gender in violation of law.

91.    Plaintiff was constructively demoted and thus removed from her position by Henry for reasons which give rise to an inference of discrimination (Henry "sweeping" Plaintiff, among others, in favor of a younger class of employees).

25

92.   Henry informed Plaintiff in no uncertain terms that she (Henry) was "seeking to give the newer, younger employees in the Division an opportunity to assume management positions - particularly those that were in the EPA-sponsored leadership programs."  Based upon this amazing display of brazen direct discrimination, Henry informed Plaintiff that she (Plaintiff) would not be considered for a position for which Plaintiff was qualified.  The individuals moved into the branch chief positions were (and are) far less-qualifed than Plaintiff.

93.   Further, Plaintiff was (and is) *far more qualified* than the younger male who immediately assumed the position from which Plaintiff was constructively demoted (Deputy Division Director), and is also more qualified than the younger male who has recently assumed the position from which Plaintiff was constructively removed (Senior Science Advisor).

94.   Henry's threats, pressure and statement to Plaintiff, as set forth above and if believed by the jury, prove the fact of discriminatory animus without inference or presumption.  Wrongdoers Henry/Cleland-Hamnett/Jones acted on their discriminatory bias against Plaintiff - with the knowledge and acquiescence of McCarthy.

95.   Plaintiff has been deeply stigmatized based upon her age, causing significant depression and difficulty maintaining an appropriate level of respect within her area of scientific expertise.

96.   The relevant Defendant's conduct as alleged herein constitutes discrimination based on age in violation of the ADEA.  The stated reasons for the relevant Defendant's conduct were not the true reasons, but instead were pretext to cover up the Defendant's discriminatory animus.

### COUNT II
### (Violations of 29 U.S.C. §621 et seq. - Age Discrimination in Employment)

### Against Defendant Environmental Protection Agency

97.   The foregoing paragraphs 1-96 are realleged and incorporated by reference herein.

26

98.     Upon information and belief, senior EPA officials, including those in Plaintiff's immediate division, beginning in 2012-2013, targeted older, more experienced personnel and subjected them to disparate treatment, continuing hostile work environments, intolerable working conditions, and prohibited personnel practices considered constructive adverse actions.

99.     This EPA policy encapsulates other prohibited and illegal personnel practices, including but not limited to age-based:  misuse of authority (by Jones, Cleland-Hamnett, Henry, Morris, and McCarthy, for their agreement to "sweep" older workers); obstruction of the right to compete for a position (Henry and Cleland-Hamnett for their discriminatory placement of younger, less competent workers to replace older, experienced ones);  influencing the withdrawal of one or more persons from competition to improve the prospects of others (Henry and Cleland-Hamnett); and taking or failing to take personnel actions where such taking (or failing to take) such actions is in violation of law, rule or regulation (Henry and Cleland-Hamnett).

100.    Plaintiff, and myriad other older similarly-situated workers subject to the same supervisory chain of command, were treated in the same or highly similar manner - making out a clear underlying harmful and disparate impact that will, by its very nature, meet the standard deviation analysis required for the jury to find in favor of Plaintiff on the merits.

101.    The EPA both demoted and constructively discharged Plaintiff after subjecting her to disparate treatment and a continuing hostile work environment in order to make Plaintiff's working conditions intolerable, on account of Plaintiff's age - consistent with a policy instituted by Henry and condoned by Cleland-Hamnett, Jones and McCarthy.

102.    Plaintiff was subjected to such discrimination because of her age.  Plaintiff was 59 years of age at the time of her constructive demotion and 60 years of age at the time of her constructive discharge.

27

103.    Henry, plaintiff's putative supervisor (pursuant to decisions at that time already made by
Plaintiff's second-line supervisor Cleland-Hamnett), during an office reorganization begun in
2013 with the support and knowledge of Cleland-Hamnett, Jones and McCarthy, illegally
pressured Plaintiff to step aside as Deputy Division Director and refused to consider Plaintiff for
a RAD branch chief position *based wholly upon age*.

104.    Specifically, on or around September 9, 2013, defendant Henry informed Plaintiff of her
constructive demotion from Deputy Division Director to a Senior Advisor position *in order to
provide opportunities (for promotion) to management positions for younger staff*.   These
younger staff were not as qualified as Plaintiff - only significantly younger - and Henry concedes
that these decisions were made based *only* upon age factors.

105.    Henry pressured Plaintiff to accept the constructive demotion as part of a staffing plan
that defendants Cleland-Hamnett and Henry (with the approval of defendant Jones) had devised
for the Risk Assessment Division.  Plaintiff refused, was involuntarily "reassigned", and was
thereafter subjected to vicious retaliation.

106.    Cleland-Hamnett and Jones, having approved of Henry meeting with staff who would be
subjected to adverse action through "forced reassignment" in the manner described herein (and
prior to Henry assuming the RAD Director position), have never acted to mitigate this *prima
facie* discrimination.

107.    As noted, Plaintiff was replaced (in the position she encumbered when constructively
demoted/removed) by a younger, less competent male named Stanley Barone.  The personnel
action was ordered by Henry and approved by Cleland-Hamnett.

108.    The credentials of Barone are inferior to those of Plaintiff, and Barone is younger than
Plaintiff.  Importantly, as set forth herein, Plaintiff has already pleaded discrimination sufficient

to reach the jury and - due to the direct discrimination of EPA management to refuse consideration of highly-qualified persons (like Plaintiff), based solely upon age - to prevail on the merits.

109.     Plaintiff was constructively demoted and thus removed from her position by Henry for reasons which give rise to an inference of discrimination (Henry "sweeping" Plaintiff, among others, in favor of a younger, more diverse class of employees).

110.     However, Henry's threats, pressure and statement to Plaintiff, as set forth above and if believed by the jury, proves the fact of discriminatory animus without inference or presumption, and wrongdoers  Henry/Cleland-Hamnett/Jones acted on their discriminatory bias against Plaintiff - with the knowledge and acquiescence of  McCarthy.

111.     Plaintiff has been stigmatized based upon her age, causing significant depression.  Like others subjected to this discrimination (as a matter of law), the stigma attached to being constructively demoted and removed has led to a loss of respect and earning capacity, among myriad other negative outcomes, resulting directly from the EPA black letter discrimination.

112.     The relevant Defendant's conduct as alleged herein constitutes discrimination based on age in violation of the ADEA.  The stated reasons for the relevant Defendant's conduct were not the true reasons, but instead were pretext to cover up the Defendant's discriminatory animus.

113.     It is plausible that the Supreme Court, *Burlington Industries v. Ellerth; Farragher v. City of Boca Raton*, *infra*  has set out a tangible employment action standard of strict liability for the type of pervasive, severe, *de jure* discrimination set forth herein - it does not matter whether the EPA knew or should have known of the harassment, or even if the employer forbids such conduct through regulation, rule, or Administrator policy.

## COUNT III
### (Disparate Impact - Age)

### Against Defendant Environmental Protection Agency

114.    The foregoing paragraphs 1-113 are realleged and incorporated by reference herein.

115.    The Civil Rights Act of 1991, 42 U.S.C.  § 2000e-2(k) provides that Plaintiffs pleading disparate impact claims may show - as Plaintiff pleads here - that the challenged practice has a disparate impact on a protected group; the analogous ADEA standards derive from *Wards Cove v. Atonio*, 490 U.S. 642, with the qualification that the ADEA's "reasonable factor other than age" substitutes for business necessity.  Defendant EPA has no reasonable factor other than age, but regardless of any such excuse, it would not prevent liability here due to the direct discrimination clearly and unequivocally establishing that RAD reorganization policy and rationale was based upon factors that establish *per se* age discrimination and will permit the jury to find for the Plaintiff.

116.    Defendants Cleland-Hamnett and Henry put in place an employment practice approved by Defendant Jones of promoting younger, more diverse management candidates.  While on its face one might argue - if one represents the United States - that such an employment practice is "neutral," it clearly has had the impact of discriminating against older, more experienced employees based upon their age and race, and thus putting the lie to any such contention.  Henry pressured Plaintiff to accept a non-managerial position - and would not consider her for a branch chief position - *solely* in order to promote younger, more diverse (and far less qualified) employees.  This has had a devastating disparate impact upon Plaintiff and numerous others similarly impacted - well beyond the standard deviation echelon required to establish disparate impact and advance Plaintiff's claims to the jury.

117.     Plaintiff has, but need not, made out a *prima facie* case of discrimination in this complaint; and she has, but need not, match facts to every element of a legal theory in order to state a claim of disparate impact.  Henry and Cleland-Hamnett, through their discriminatory policy and actions in pursuit thereof, have done the "heavy lifting" *i.e.*, direct discrimination, required to send Plaintiff's discrimination claims forward for jury consideration.

118.     Disparate impact discrimination, as here, involves a facially "neutral" employment practice that is discriminatory even absent evidence of EPA's subjective intent to discriminate. Disparate impact can be evidence of disparate treatment, *see e.g., Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 541-42 (1993).

119.     The employment practice at issue has had, as noted, a devastating disparate impact that far exceeds the pleading required because the openly discriminatory policy *by its very nature* has a disparate impact upon older employees. ("antidiscrimination laws must be construed to encompass disparate impact claims when their text refers to the consequences of actions and not just the mindset of actors, and where that interpretation is consistent with statutory purpose"), *see Smith v. City of Jackson*, 544 U.S. 228, 235 (2005)(" § 4(a)(2) of the ADEA contain[s] language 'prohibit[ing] such actions that deprive any individual of employment opportunities or otherwise adversely his status as an employee, because of such individuals' ... age" ) - thus "compel[ling] recognition of disparate impact liability. *Id*. at 236; *citing Griggs v. Duke Power*,  401 U.S. 424 (1971).

120.     It is obvious that any such quasi-policy will undeniably have a disparate impact upon those older as they have not been given the opportunity to advance through management training, and it is therefore uncontestable that the younger replacements at issue here are not in

the relevant protected class and that the data showing impact to 2-3 standard deviations as to age

outside of this litigation has been well-pleaded and established.

121.     It is inconceivable, under the facts presented here, that the ADEA disparate impact

standard deviation would not far exceed what is necessary to *prevail* - likely at the rate of 100% -

since the policy at issue is at its core *to replace older with younger individuals*.   In other words,

not only the policy's impact, *but its very purpose*, would be to replace only employees over the

age of 40, and EPA is therefore liable for discriminatory misconduct *notwithstanding any*

*standard deviation analysis* - particularly in light of the fact that the district judge need not infer

discriminatory motive from circumstantial evidence.

**COUNT IV**
**(Continuing Hostile Work Environment)**

**Against Defendant Environmental Protection Agency**

122.     The foregoing paragraphs 1-121 are realleged and incorporated by reference herein.

123.     Harassing an employee on account of age violates the ADEA by offering terms and

conditions to employees of based upon age that are less (or more) favorable than those it offers

to employees of another age - or simply because the disfavored employee possesses those age-

based characteristics.

124.     Plaintiff was subjected to an intimidating, hostile and offensive work environment when

she was constructively demoted, stripped of all duties and given duties appropriate to an

employee well below her grade level, threatened, scorned and viciously ridiculed by Henry and

Cleland-Hamnett, moved into an open cubicle to humiliate her and send a "warning" to others,

and disparaged by rumors about "being terminated."  Such humiliating, hostile and offensive

conduct was based upon his protected status as evidenced by, for example but clearly not an

32

exhaustive list, Henry's pressure and threats to force Plaintiff to step aside for younger employees who were male, threatening comments regarding being "terminated" and subjecting Plaintiff (who had previously been selected upon merit above Henry for a previous position) to daily humiliation.  This conduct was so severe as to make working conditions intolerable - causing deep, lasting depression - and thus were sufficiently severe and pervasive to alter the terms and conditions of his employment and create an abusive work environment as would be perceived by *any* reasonable person under similar circumstances.  At the time such conduct occurred and as a result of such conduct, Plaintiff subjectively perceived her work environment to go well beyond abusive, severe and cruel, to the level of intolerable and blatantly illegal - an attempt by Henry to force Plaintiff to resign and drive her deeper into a depressive state.  Henry's conduct went far beyond a few isolated incidents, and were continued daily and constantly.

125.    The relevant Defendant's conduct as alleged above constitutes a continuing hostile and abusive work environment in violation of the ADEA.  The stated reasons for the relevant Defendant's conduct were not the true reasons, but instead were pretext to cover up the Defendant's discriminatory animus.  The intolerable working conditions to which Plaintiff was subjected were permeated with discriminatory intimidation, ridicule and insult sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create a continuing abusive working environment.  The working environment and underlying conditions were sadistic and cruel.

126.    Plaintiff's workplace was permeated with intolerable working conditions, and the malefactors responsible for the continuing hostile work environment made these conditions sufficiently severe and pervasive so as to completely alter the conditions of employment, create an abusive working environment, and underlie a constructive demotion.

33

127.    As relevant to the conduct of Henry, Cleland-Hamnett and Jones, EPA is subject to

vicarious liability under both Title VII and the ADEA for unlawful continuing harassment based

upon age and reprisal perpetrated by supervisors with immediate and successively higher

authority over Plaintiff, *Burlington Industries v. Ellerth* 118 S.Ct. 2257 (1998); *Farragher v. City

of Boca Raton*, 118 S.Ct. 2275 (1998).  EPA is similarly liable, therefore, for age-based and

retaliatory vicarious liability for supervisory harassment.  It is plausible that the Supreme Court,

*id*,  has set out a tangible employment action standard of strict liability for the type of pervasive,

severe, *de jure* discrimination set forth herein - it does not therefore matter whether the EPA

knew or should have known of the harassment, or even if the employer forbids such conduct

through regulation, rule, or Administrator policy.

## COUNT V
### (Reprisal Based Upon Previous Protected Activity)

### Against Defendant Environmental Protection Agency

128.    The foregoing paragraphs 1-127 are realleged and incorporated by reference herein.

129.    The Age Discrimination in Employment Act and Title VII prohibit retaliation by a

federal employer because an individual has engaged in protected activity.  *See generally Gomez-

Perez v. U.S. Postal Service*, 128 S.Ct. 1931 (2008).  Plaintiff engaged in protected activity by

opposing several practices made unlawful by the aforementioned discrimination statutes, and by

filing a charge and participating in the related civil rights investigation under the applicable

statutes, and by filing a disclosure and reporting various prohibited personnel practices to the

U.S. Office of Special Counsel.

130.    This case involves the three essential elements of a retaliation claim.  Plaintiff engaged in

several forms of unambiguous opposition to discrimination by Henry and Cleland-Hamnett

(which was known to them when they were made to testify under oath during the EPA Civil Rights internal investigation instigated by Plaintiff), and participated in the statutory complaint process involving claims of unlawful discrimination.  Further, the manner of opposition to EPA's discrimination was not only reasonable but completely within the letter of the laws and regulations concerning opposition to discrimination and those who have violated the anti-discrimination laws - to wit, Plaintiff entered counseling after well-founded complaints to the EPA Office of Civil Rights, and continued through the pre-formal stage and the formal stage until his wrongdoer supervisors sought to remove her and threatened to take away her health insurance benefits.  Plaintiff certainly had a "good faith" belief that the opposed practice violated the anti-discrimination laws, and her claims were accepted for investigation and were investigated - even though the initial validity of the claims are not necessary to show the investigation revealed that Plaintiff's claims were valid.  In case of fact, *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008) suggests far less is required to prevail - an adverse action such as those suffered by Plaintiff here because she had brought a discrimination claim is enough.  There does not appear to be any need to revert to circumstantial evidence in order for Plaintiff to succeed on the merits.

131.    Shortly after Plaintiff's well-founded claims were investigated by EPA OCR, the intolerable working environment was not only continued, but intensified immensely - thus establishing the causal connection necessary.

132.    EPA is prohibited from taking an action, as they have evidently done, against Plaintiff (or others) that "well might" have dissuaded a reasonable worker from making or supporting a charge of discrimination.  *Thompson v. N. Am. Stainless*, 562 U.S. 170 (2011)(*quoting Burlington Northern*, 548 U.S. at 68).

35

133.    Further, EPA was not permitted to, but did, retaliate against Plaintiff when they constructively removed her from federal service.  This produced clear and concrete harm to Plaintiff.

134.    Plaintiff engaged in statutorily protected activity, was subjected to constructive demotion then constructively removed from federal service, with a clear causal connection between the protected activity and the pretextual constructive actions.

135.    The relevant Defendant's conduct as alleged above constitutes reprisal for engaging in prior EEO and related protected activity prior to Plaintiff's constructive removal from federal service.   The stated reasons for the relevant Defendant's conduct were not the true reasons, but instead were pretext to cover up the Defendant's discriminatory animus.

136.    As relevant to the conduct of Henry, Cleland-Hamnett and Jones, EPA is subject to vicarious liability for unlawful continuing harassment based upon age and reprisal perpetrated by supervisors with immediate and successively higher authority over Plaintiff, *Burlington Industries v. Ellerth* 118 S.Ct. 2257 (1998); *Farragher v. City of Boca Raton*, 118 S.Ct. 2275 (1998).  EPA is similarly liable, therefore, for age-based and retaliatory vicarious liability for supervisory harassment.  It is plausible that the Supreme Court, *id*,  has set out a tangible employment action standard of strict liability for the type of willful, pervasive, severe, *de jure* discrimination set forth herein - it does not matter whether the EPA knew or should have known of the harassment, or even if the employer forbids such conduct through regulation, rule, or Administrator pretextual policy.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff demands judgment against Defendants and in favor of Plaintiff as follows:

36

A.      **Under COUNT I**, that Plaintiff be (1) reinstated with a retroactive promotion to the SES level or some equivalent grade and pay band commensurate with her experience and expertise, with all attendant back pay, benefits and other properly-offset emoluments of employment: (2) awarded the sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation; (3) awarded front pay at the SES (Level III) pay level (including relevant increases) until she reaches an age when she would have voluntarily retired from federal service but for EPA management's discriminatory/retaliatory mistreatment of her; (4) awarded costs and reasonable attorneys' fees at the current Washington, D.C. lodestar rate incurred with this lawsuit with interest thereon under, *inter alia*, the Equal Access to Justice Act, 28 U.S.C.A. § 2412; and (5) awarded other damages and further relief as deemed just and reasonably calculated to make Plaintiff whole.

B.      **Under COUNT II**, that Plaintiff be (1) reinstated with a retroactive promotion to the SES level or some equivalent grade and pay band commensurate with her experience and expertise, with all attendant back pay, benefits and other properly-offset emoluments of employment: (2) awarded the sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation; (3) awarded front pay at the SES (Level III) pay level (including relevant increases) until she reaches an age when she would have voluntarily retired from federal service but for EPA management's discriminatory/retaliatory mistreatment of her; (4) awarded costs and reasonable attorneys' fees at the current Washington, D.C. lodestar rate incurred with this lawsuit with interest thereon under, *inter alia*, the Equal Access to Justice Act, 28 U.S.C.A. § 2412; and (5) awarded other damages and further relief as deemed just and reasonably calculated to make Plaintiff whole.

C.      **Under COUNT III**, that Plaintiff be (1) reinstated with a retroactive promotion to the SES level or some equivalent grade and pay band commensurate with her experience and expertise, with all attendant back pay, benefits and other properly-offset emoluments of employment: (2) awarded the sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation; (3) awarded front pay at the SES (Level III) pay level (including relevant increases) until she reaches an age when she would have voluntarily retired from federal service but for EPA management's discriminatory/retaliatory mistreatment of her; (4) awarded costs and reasonable attorneys' fees at the current Washington, D.C. lodestar rate incurred with this lawsuit with interest thereon under, *inter alia*, the Equal Access to Justice Act, 28 U.S.C.A. § 2412 ; and (5) awarded other damages and further relief as deemed just and reasonably calculated to make Plaintiff whole.

E.      **Under COUNT IV**, that Plaintiff be (1) reinstated with a retroactive promotion to the SES level or some equivalent grade and pay band commensurate with her experience and expertise, with all attendant back pay, benefits and other properly-offset emoluments of employment: (2) awarded the sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation; (3) awarded front pay at the SES (Level III) pay level (including relevant increases) until she reaches an age when she would have voluntarily retired from federal service but for EPA management's discriminatory/retaliatory mistreatment of her; (4) awarded costs and reasonable attorneys' fees at the current Washington, D.C. lodestar rate incurred with this lawsuit with interest thereon under, *inter alia*, the Equal Access to Justice Act, 28 U.S.C.A. § 2412; and (5) awarded other damages and further relief as deemed just and reasonably calculated to make Plaintiff whole.

38

F.    **Under COUNT V**, that Plaintiff be (1) reinstated with a retroactive promotion to the SES

level or some equivalent grade and pay band commensurate with her experience and expertise,

with all attendant back pay, benefits and other properly-offset emoluments of employment: (2)

awarded the sum of $300,000.00 in compensatory damages suffered because of the

discrimination and retaliation; (3) awarded front pay at the SES (Level III) pay level (including

relevant increases) until she reaches an age when she would have voluntarily retired from federal

service but for EPA management's discriminatory/retaliatory mistreatment of her; (4) awarded

costs and reasonable attorneys' fees at the current Washington, D.C. lodestar rate incurred with

this lawsuit with interest thereon under, *inter alia*, the Equal Access to Justice Act, 28 U.S.C.A.

 § 2412 ; and (5) awarded other damages and further relief as deemed just and reasonably

calculated to make Plaintiff whole.

G.    **Under all COUNTS**, award Plaintiff such other and further relief as the Court deems

appropriate and just.

## **JURY DEMAND**

Plaintiff demands trial by jury on all claims and issues so triable.

DATED:  April 21, 2016                    _____/MRH/_____
                                          Mark R. Heilbrun, Counsel of Record
                                          **(D.C. Bar No. 434681)**
                                          HARLAN BRADLEY LLP
                                          Reagan International Trade Center
                                          1300 Pennsylvania Avenue, N.W.
                                          Suite 190, #414
                                          Washington, D.C. 20004
                                          (202) 997-1609

                                          Counsel for Plaintiff