UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JENNIFER SEED,           )<br>                          )<br>     Plaintiff,          )<br>                          )<br>     v.                   )<br>                          )<br> SCOTT PRUITT, Administrator,   )<br> U.S. Environmental Protection Agency, *et al.*,  )<br>                          )<br>     Defendants.          )<br>                          ) | Case No. 16-cv-0748 (TSC) |

## MEMORANDUM OPINION

Plaintiff Jennifer Seed alleges that Defendants violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, when she was constructively demoted and discharged in 2013 and 2014. Defendants have moved for partial dismissal based on Plaintiff's failure to exhaust her administrative remedies. (ECF No. 11). For the reasons set forth below, Defendants' motion is GRANTED as to Counts I, II, and V and DENIED as to Count IV.

### I.   BACKGROUND

A. Plaintiff's Reassignment and Retirement

Before her retirement in 2014, Plaintiff had been a federal employee with the Environmental Protection Agency ("EPA") for twenty-three years. (Compl. ¶ 15). From 1998 to 2013, Plaintiff served in the Office of Pollution Prevention and Toxics, Risk Assessment Division ("RAD") first as the Branch Chief for the Existing Chemical Assessment Branch and then, beginning in 2009, as Deputy Division Director. (*Id.* ¶¶ 15, 19, 30). In her roles as Branch Chief and Deputy Division Director, Plaintiff served as both a manager and a senior scientist, at

the General Scale GS-15 pay level. (*Id.* ¶¶ 10, 19).

In early September 2013, Tala Henry, who was scheduled to assume the role of RAD Division Director beginning the following month, informed Plaintiff that the EPA was reorganizing, and that as a part of that reorganization she would no longer continue in her role as Deputy Division Director. (*Id.* ¶¶ 31–32). Plaintiff was instead placed in the role of Senior Science Advisor. (*Id.* ¶ 32). Plaintiff characterizes the reorganization as a "sham" and alleges that "all of the older managers were removed" from management positions. (*Id.* ¶ 39). At the time of this reassignment, Plaintiff was approximately fifty-nine years old. (*Id.* ¶ 70). She was replaced as Deputy Division Director by Stanley Barone, who was a Branch Chief and fifty-three years old at the time. (*Id.* ¶¶ 18, 33, 70). Plaintiff asked Henry about filling a vacant Branch Chief position instead of the Senior Science Advisor role, and she alleges that Henry responded that the EPA was "looking to give the newer, younger individuals an opportunity to advance through management promotions, particularly those that were in [EPA] leadership programs." (*Id.* ¶¶ 35, 70).

Plaintiff began her new position as Senior Science Advisor in November 2013. (*Id.* ¶ 38). Ordinarily, senior science advisors at the GS-15 level provide scientific leadership, develop national and international environmental science policy, review high-level scientific documents prior to their dissemination, provide expert guidance and advice to senior management, and attend high-level briefings and decision meetings. (*Id.* ¶¶ 45, 47). However, while Plaintiff continued to be compensated at the GS-15 level, she alleges that she was excluded from all high-level meetings, was removed from any significant or grade-appropriate assignments, and was never asked to review any existing chemical risk assessment documents RAD had developed. (*Id.* ¶ 45). Further, she alleges that all assignments and tasks in which she

had previously held a key role were discontinued. (*Id.* ¶ 46). As a result, Plaintiff describes this reassignment as a "constructive demotion." Plaintiff was also removed from her office and "placed in an open cubicle along a common route in the office," which caused her to experience distress and humiliation. (*See id.*). Plaintiff alleges that following her reassignment, her colleagues and supervisors created an intolerable work environment in which they refused to acknowledge her, responded menacingly to questions, and generally caused her to feel deeply depressed. (*Id.* ¶¶ 46, 48–50, 111). Ultimately, due to these changes in her work experience, Plaintiff retired from employment at the EPA under the Voluntary Separation Incentive Program. (*Id.* ¶ 56). She characterizes this retirement as a "constructive discharge."

    B.  <u>Administrative Proceedings</u>

On September 27, 2013, Plaintiff submitted an internal complaint to the EPA's Office of Civil Rights ("OCR"). (*Id.* ¶ 41). Plaintiff had an initial interview with OCR a month later, and, in January 2014, OCR issued a Notice of Right to File letter. (*Id.*). In February 2014, OCR accepted Plaintiff's "formal stage" complaint, and its EEO investigation report was completed in June 2014. (*Id.* ¶¶ 41, 43). That same month, OCR informed Plaintiff of her continuing right to sue, following which she filed an EEO complaint with the EEOC. (*Id.* ¶ 43). Plaintiff also filed a simultaneous appeal of her perceived constructive demotion and discharge to the Merit Systems Protection Board ("MSPB") on October 12, 2015. (¶¶ 8, 75–76). In the appeal, she alleged that the intolerable working conditions in her office were the cause of her constructive discharge. (*Id.* ¶ 8). Following no decision by the EEOC or MSPB, Plaintiff subsequently filed the present suit.

**II.   MOTION TO DISMISS STANDARD**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim "tests the

legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the factual content allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal quotation marks omitted). Evaluating a 12(b)(6) motion is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

### A.   Constructive Demotion and Constructive Discharge (Counts I, II)

In Count I, Plaintiff alleges that her reassignment from the Deputy Director of RAD to a Senior Science Advisor position was a constructive demotion. (Compl. ¶¶ 83–96). In Count II, she alleges that her retirement under the Voluntary Separation Incentive Program was a constructive discharge. (Compl. ¶¶ 97–113). In order to exhaust her administrative remedies prior to bringing this litigation, Plaintiff appealed both of these actions to the Merit Systems Protection Board pursuant to 5 U.S.C. § 7702. However, Defendants argue that these claims must be dismissed because Plaintiff's MSPB appeal was untimely. Under the MSPB's regulations, appeals must be filed within thirty days of the challenged employment action. 5 C.F.R. § 1201.22(b). The exact dates of Plaintiff's reassignment and retirement are not clear from the Complaint, in which she states that the reassignment was "effective November 2013" and does not provide a date for her retirement. (Compl. ¶¶ 30, 38). Plaintiff's EEO complaint

noted that the date of the reassignment was September 27, 2013, though her MSPB appeal states that it was on October 20, 2013. (Def. Exs. 1, 2). Defendants assert in their motion that the challenged reassignment took effect on November 17, 2013 and Plaintiff's retirement took effect on December 27, 2014. (Def. Mem. at 5). Plaintiff filed her MSPB appeal on October 12, 2015. (Compl. ¶ 8; Def. Ex. 2). Using Defendants' dates as the most recent of those alleged, Plaintiff's MSPB appeal was filed 694 days after her reassignment and 289 days after her retirement, which clearly exceeded the thirty-day window required by the MSPB's regulations.

Plaintiff offers no explanation for why the thirty-day filing requirement should have been waived or tolled. Instead, she mistakenly directs the court to 5 U.S.C. § 7702(e)(1)(B), which permits an individual to bring a civil action in district court if the MSPB has not acted on her appeal within 120 days, as Plaintiff did here. However, this provision does not address the fact that, regardless of whether 120 days had passed from the filing of Plaintiff's administrative appeal, that appeal itself was still untimely, as it was filed well after the thirty-day window provided in the MSPB's regulations. Because Plaintiff filed her MSPB appeal after the deadline for filing, the court agrees that Plaintiff has failed to adequately exhaust her administrative remedies with respect to these claims due to her untimely MSPB appeal. The court therefore GRANTS Defendants' motion to dismiss with respect to the Count I's constructive demotion claim and Count II's constructive discharge claim.

  B. <u>Discriminatory Hostile Work Environment (Count IV)</u>

Plaintiff alleges that Defendants' discriminatory actions created a hostile work environment. (Compl. ¶¶ 122–27). Defendants argue that Plaintiff failed to exhaust her administrative remedies with regard to this claim because, despite filing an EEO complaint alleging age discrimination, Plaintiff failed to allege facts that would suggest a hostile work

5

environment claim.  While Defendants note that Plaintiff did allege a hostile work environment in her MSPB appeal, as explained above, the court has concluded that the MSPB filing was untimely and cannot form the basis of Plaintiff's administrative exhaustion for her claims. Therefore, the primary issue at this stage is whether Plaintiff exhausted her hostile work environment claim in her EEO complaint.

In Plaintiff's EEO complaint, she alleged that she faced discrimination when she was reassigned from Deputy Division Director to Senior Science Adviser.  (*See* Def. Ex. 1).  She describes the EPA's actions as "odd" and "insincere," and suggests that the job reassignment was pre-arranged because they wrote the new position description "with [her] in mind" despite being asked to give her preferences for positions.  (*Id.*).  She complained about "the overall pattern" of events and further included "the demotion of others" in her allegations.  (*Id.*).  The conduct described in her Complaint, however, goes significantly further.  There, she alleges that she was "stripped of all duties and given duties appropriate to an employee well below her grade level, threatened, scorned and viciously ridiculed . . . , moved into an open cubicle to humiliate her and send a 'warning' to others, and disparaged by rumors about 'being terminated.'"  (Compl. ¶ 124). She further alleges that she was faced with "pressure and threats to force [her] to step aside for younger employees who were male, threatening comments regarding being 'terminated' and subjecting [her] . . . to daily humiliation."  (*Id.*).  Finally, she states that this was all "an attempt . . . to force [her] to resign and drive her deeper into a depressive state."  (*Id.*).

The primary purpose of the exhaustion requirement is to provide the EEOC and defendants with sufficient notice to begin the investigative process.  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (citations omitted).  Therefore, the exhaustion requirement "should not be construed to place a heavy technical burden on individuals untrained in

negotiating procedural labyrinths." *Id.* (quoting *Loe v. Heckler*, 768 F.2d 409, 417 (D.C. Cir. 1985)) (internal quotation marks omitted). Because exhaustion is not "a mere technicality," however, a plaintiff's claims in her subsequent Title VII suit are "limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* (quoting *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)) (citation and internal quotation marks omitted). In *Park*, the D.C. Circuit found that plaintiff had not exhausted her claim because her EEOC charge failed to mention a hostile work environment claim and also lacked "any factual allegations supporting such a claim." *Id.* at 908. Therefore, while plaintiffs need not "use any magic words in a charge much less the specific term 'hostile work environment' in order to properly exhaust a claim," *Whorton v. WMATA*, 924 F. Supp. 2d 334, 348 (D.D.C. 2013) (citations omitted), they must allege some facts to put an employer and the EEOC on notice.

In the court's view, Plaintiff's allegations in her hostile work environment claim are sufficiently "reasonably related to the allegations of the charge and growing out of such allegations" under the standard articulated in *Park*. While much of the conduct alleged in her Complaint was not included in Plaintiff's EEO complaint, and Plaintiff certainly could have amended her EEO complaint to include subsequent discriminatory acts, the court finds that the EEOC and the EPA were sufficiently on notice that Plaintiff's challenge extended to "the overall pattern" of Defendants' conduct. Plaintiffs' allegations here—including removal of job duties, reassignment from an office to an open cubicle, feelings of humiliation, and pressure to retire— all sufficiently grow out of the constructive demotion and reassignment complained of in her administrative charge. Therefore, the court finds that Plaintiff has sufficiently exhausted her discriminatory hostile work environment claim, and Defendants' motion to dismiss is DENIED

with respect to Count IV.

### C. Retaliation (Count V)

Finally, Plaintiff alleges that following her September 2013 EEO complaint she was subjected to acts of retaliation, amounting to a hostile work environment.  (Compl. ¶¶ 128–36). Defendants argue that Plaintiff's claim must be dismissed due to her failure to exhaust administrative remedies.  Of course, given that Plaintiff alleges here that she experienced acts of retaliation due to her EEO activity, her original EEO complaint does not, and would not be expected to, include allegations of retaliation.  However, Plaintiff did not amended her original EEO complaint or otherwise present these new allegations in the administrative process.

Under Title VII, "each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  A party must exhaust administrative remedies "for each discrete act of discrimination alleged or lose the ability to recover for it."  *Dudley v. WMATA*, 924 F. Supp. 2d 141, 155–56 (D.D.C. 2013) (quoting *Lipscomb v. Winter*, 577 F. Supp. 2d 258, 271 (D.D.C. 2008)) (internal quotation marks omitted).  As Defendants note, this court has recently written that "[t]he D.C. Circuit has not ruled on the specific question of whether, post-*Morgan*, retaliatory acts that are similar to those alleged in an earlier timely EEOC charge require their own EEOC charges to satisfy this exhaustion requirement.  However, most district court decisions in this circuit have concluded that under *Morgan* subsequent retaliatory acts do require new administrative charges."  *Brokenborough v. District of Columbia*, No. 13-cv-1757 (TSC), 2017 WL 663524, at *8 (D.D.C. Feb. 17, 2017) (citing *Clark v. Johnson*, ---- F. Supp. 3d ----, 2016 WL 4742230, at *9 (quoting *Achagzai v. Broadcasting Bd. of Govs.*, 2016 WL 471274, at *6 (D.D.C. Feb. 6, 2016))).  However, the court finds the present case distinguishable from

*Morgan* and the open question of whether once a plaintiff alleges a retaliation claim before the EEOC she must bring new administrative charges for each additional act of retaliation to be considered to have exhausted those claims.  Here, Plaintiff never raised a retaliation claim in the first instance, and so the question of whether subsequent retaliatory acts are substantially similar to the first allegation is not before the court.  Instead, the court is presented with the more straight-forward issue that Plaintiff only alleged an age discrimination claim before the EEOC and now attempts to raise a separate retaliation claim here.  Because Plaintiff's EEO complaint cannot be construed to give any notice of a retaliation charge, the court finds that Plaintiff has failed to properly exhaust her administrative remedies with respect to her allegations of retaliation.  Therefore, Defendants' motion to dismiss is GRANTED on Count V.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART as to Plaintiff's constructive demotion claim in Count I, her constructive discharge claim in Count II, and her retaliation claim in Count V, and DENIED IN PART as to Plaintiff's hostile work environment claim in Count IV.  Additionally, Defendants' motion did not address Plaintiff's discrimination claim in Count I based on her reassignment and her disparate impact claim in Count III, and therefore these remain as live claims in this case.

Date:  March 30, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge